UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: | |

**Proceedings:** **[IN CHAMBERS] ORDER FOLLOWING FINAL PRETRIAL CONFERENCE**

Plaintiffs I-Flow LLC, Kimberly-Clark, Inc., and Kimberly-Clark Global Sales, LLC ("Plaintiffs") and Defendant Progressive Medical, Inc. ("Defendant") appeared for the Final Pretrial Conference on February 10, 2014.  The Court and counsel discussed (1) settlement, (2) exhibits that Plaintiffs contend are privileged or protected, (3) motions in limine, (4) recent applications for filing under seal, and (5) trial procedure.  This Order summarizes the discussion of those issues and provides the Court's further Orders.

## 1.    SETTLEMENT

Near the outset of the case, the parties attended a mediation before the Honorable Edward A. Infante (Ret.).  That mediation was unsuccessful, and did not last the entire scheduled day.  The parties have continued to discuss settlement throughout the case.  Plaintiffs believe that in light of the Orders the Court has issued narrowing the issues in the case, another mediation would be worthwhile.  Defendant believes that the parties' positions are too far apart to warrant the attendance of a busy executive from a third party in Germany that is at least partially indemnifying Defendant in this action.  Defendant therefore does not want to force that executive to attend a mediation without further movement from Plaintiffs in advance of the mediation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

The Court is concerned that significant Court resources and jury time will be used to conduct a trial on a dispute that could be resolved through a mediation attended by all individuals necessary for resolution.  The Court strongly encourages the parties to mediate the case before trial.  The parties should inform the Court if an adjustment to the trial date would be helpful to accommodate international travel.

**2.      IN CAMERA REVIEW OF DISPUTED EXHIBITS**

Defendant's trial exhibit list contained three emails provided by Plaintiffs in discovery—DTX 1068, DTX 1070, and DTX 1077—but Plaintiffs then clawed back those emails as inadvertently produced.  Plaintiffs assert that the emails are covered by the attorney-client privilege or the work product protection.  Defendant believes the emails are unprotected.

In a case where subject matter jurisdiction arises from a federal patent law question, the applicability of attorney-client privilege  is determined by federal common law.  *Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1368 (Fed. Cir. 2012).  Where the issues in a patent case are not unique to patent law, regional circuit law applies.  *Id*.  In the Ninth Circuit, an eight-part test typically determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The party asserting the privilege bears the burden of proving each essential element.  *Id*.

The federal work product doctrine generally prevents the disclosure of "documents and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3).

Plaintiffs submitted the emails for the Court's in-camera review.  The Court now provides its rulings on those disputed emails.

- **DTX 1068** is an email chain comprising three emails sent on May 18, 2011 and May 19, 2011.  The emails are between two non-lawyer employees of Plaintiff I-Flow, but discuss whether material needs to be gathered for an in-house attorney. The emails are protected at least as work product, as collecting the referenced material for attorney analysis (presumably about infringement) is an activity performed "in anticipation of litigation or trial."

- **DTX 1070** is an email chain comprising three emails sent on November 10, 2011. The emails are between non-lawyer employees of Plaintiff I-Flow, but discuss the need to obtain evidence of Defendant's sales in California.  Given the content of the emails, and Plaintiffs' counsel's representation that the information was being collected at counsel's request for a venue analysis, the emails are protected at least as work product.

- **DTX 1077** is an email chain comprising two emails sent on April 7, 2009.  The emails are between non-lawyer employees of Plaintiff I-Flow, and reference material sent to counsel.  Because the material sent to counsel was in anticipation of litigation, a portion of the top email is protected at least as work product.  But the remainder of the email chain could just as easily relate to non-litigation-related competitive concerns.  Plaintiffs shall produce for Defendant's use at trial a version of the document redacting the seven words of the first sentence starting after the dash and ending before the period of the top email on the page.

**3.     MOTIONS IN LIMINE**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|----------|------------------------|------|-------------------|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

### 3.1    Plaintiffs' Motion to Exclude Richard Gering, Ph.D., CLP from Testifying at Trial on the Issue of Damages

The Court tentatively DENIES the motion.  Gering's analysis was not primarily premised on a non-comparable agreement.  And that agreement may be relevant under *Georgia-Pacific* Factor 12 for the reasons Defendant states.  Granting the motion would require accepting Plaintiffs' version of facts that need to be established by evidence at trial.

### 3.2    Plaintiffs' Motion to Exclude "Overfilling Evidence"

Defendant identified this motion as one of particular significance.  The Court therefore provides its final ruling, and DENIES the motion.  Defendant concedes that evidence that the accused products' housing only confines their reservoirs when filled beyond their nominal and recommended volumes ("overfilled") is irrelevant to liability.  But Defendant contends that the overfilling evidence is relevant to willfulness and damages.

As to willfulness, Defendant contends that the overfilling evidence rebuts Plaintiffs' accusation that Defendant copied Plaintiffs' products, and helps establish Defendant's subjective belief of noninfringement.  While the Court has rejected Defendant's noninfringement argument based on overfilling, it has not yet made a determination about whether "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and Plaintiff will need to establish to the jury that the risk of infringing "was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  The evidence is relevant, and will not be excluded, for those purposes.

As to lost profits, Plaintiffs argue that the absence of overfilling is irrelevant to the demand factor of the *Panduit* test.  The *Panduit* test requires a showing of (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

profit that would have been made.  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).  Factor 1 of the *Panduit* test "does not require any allocation of consumer demand among the various limitations recited in a patent claim. Instead, [it] simply asks whether demand existed for the 'patented product,' *i.e.*, a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'"  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).

But in so holding, the Federal Circuit reasoned that requiring a showing of demand for individual claim limitations would "unnecessarily conflate[] the first and second *Panduit* factors.  *Id*.  That is, absence of specific demand for particular claim limitations can lead to a finding that an acceptable noninfringing substitute was readily available.  *Id*.  (citing *Grain Processing Corp. v. Am. Maize–Products Co.*, 979 F. Supp. 1233, 1237 (N.D. Ind.1997) (Easterbrook, J.), *aff'd*, 185 F.3d 1341 (Fed. Cir. 1999).  Thus, the overfilling evidence may be relevant to *Panduit* Factor 2, and will not be excluded.

As to a reasonable royalty, Plaintiffs argue that overfilling should be excluded because the only relevant "use" under *Georgia-Pacific* Factor 11 is Defendant's sale of the device, not the pharmacists' later filling of the device.  Plaintiffs cite *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010), which held irrelevant to *Georgia-Pacific* Factor 11 the fact that not all customers enabled the infringing feature, because the relevant use was the sale by defendants, not the use by customers.  But *Finjan* also discussed the relevance of the evidence under *Georgia-Pacific* Factors 10 and 13, which are "[t]he nature of the patented invention" and "[t]he portion of the realizable profit that should be credited to the invention."  *Id*.  (quoting *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)).  *Finjan* distinguished *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009), which overturned a damages verdict partly because under Factors 10 and 13, the component was a "tiny feature."  By contrast, in *Finjan*, the defendants emphasized the importance of the feature to customers and in internal company communications, such that "the jury could infer that a substantial fraction of the accused products' profits stemmed from" the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

feature. *Id*. Therefore, the overfilling evidence is likewise relevant here to *Georgia-Pacific* Factors 10 and 13, and will not be excluded.

### 3.3 Plaintiffs' Motion to Exclude Evidence Regarding Non-Concentric Filling of Plaintiffs' Pumps

The Court tentatively DENIES the motion. While only marginally relevant, there would be no undue prejudice from the introduction of the disputed evidence. Whether the depictions are accurate is a factual question.

### 3.4 Plaintiffs' Motion to Exclude Evidence of Plaintiffs' Knowledge of the AccuFlo Overseas

The Court tentatively DENIES the motion. While overseas uses of the AccuFlo do not give rise to a patent infringement claim, Plaintiffs' knowledge of the product from overseas sales may bear on whether it unreasonably delayed in suing once Defendant began domestic sales.

### 3.5 Plaintiffs' Motion to Exclude Argument of Evidence of Hard-Shell Elastomeric Pumps as Acceptable Non-Infringing Substitutes

The Court tentatively DENIES the motion. The virtues of hard-shell vs. soft-shell pumps, and the portion of customers for which those products are acceptable substitutes for each other, are issues of fact for the jury.

### 3.6 Defendant's Motion to Preclude All Testimony, Argument and Reference to the Accused Products as "Knock-Offs"

This is a simple motion, and the Court provides its final ruling. The Court GRANTS the motion. Any similarities between the parties' products can be shown directly. There is no probative value in the use of a term with negative connotations to describe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

Defendant's products, and the use of a pejorative term is therefore unduly prejudicial under FRE 403.

### 3.7 Defendant's Motion to Preclude All Testimony, Argument and Reference to Irrelevant Evidence of Defendant's Alleged Copying of the Products which Plaintiffs Contend to be Their Own Commercial Embodiments of the '481 Patent

This motion raises complicated interrelated issues, and the Court's view is especially tentative. Evidence of copying is emotionally powerful. While willfulness is evaluated based on the totality of the circumstances, *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1313 (Fed. Cir. 2010), that does not mean that marginally relevant but inflammatory evidence must be admitted. While the alleged copying is directly relevant to the question of whether the parties are head-to-head competitors, it is reasonably clear that the parties **are** head-to-head competitors in at least the chemotherapy and antibiotic markets, and that any attempt to attack that aspect of Plaintiffs' damages theory is likely to fail. Plaintiffs also have a number of ways to demonstrate the head-to-head nature of their competition without the copying evidence, including the customer list use and chemical testing mentioned in Plaintiffs' opposition, and testimony from Plaintiffs' employees. So, the Court is inclined to exclude the evidence under FRE 403 unless Defendant introduces evidence or argues at trial that the parties do not compete directly in the same market. If Defendant thus opens the door, the disputed copying evidence would be fair game for cross-examination and rebuttal.

### 3.8 Defendant's Motion to Preclude Any Opinion Testimony Proffered by Nicholas Godici

The Court tentatively GRANTS the motion IN PART. Godici may testify regarding general patent prosecution and reexamination procedures, although he should not be allowed to usurp the role of the Court in instructing the jury on the law. Likewise, he may testify about the **mechanics** of the '481 Patent's prosecution and reexamination

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

history, but because he is not qualified as a technical expert under FRE 702, he may not give an opinion on the **merits** of the '481 Patent's treatment at the PTO.  That is consistent with the text of his report, which did not delve into the merits of the PTO's actions.

Godici's willfulness testimony should be excluded for two reasons.  First, he has no expertise in Defendant's subjective intent, nor in what is commercially reasonable.  Second, those opinions are precluded under Fed. R. Civ. P. 37(c)(1) because his expert report failed to offer specific opinions regarding the subjective prong as to the AccuRx.  The AccuRx differs in many ways from the AccuFlo, as shown by the divergent outcomes of those products at summary judgment.  Godici's disclosure of opinions concerning the AccuFlo did not give adequate notice that he held the same opinions as to the AccuRx.

> **3.9    Defendant's Motion to Preclude All Testimony, Argument and Reference to the Alleged Indemnification of Defendant**

The Court tentatively DENIES the motion.  Plaintiffs want to use Defendant's indemnification by its manufacturer as proof of Defendant's knowledge that an infringement claim was likely, which is relevant to willfulness.  The indemnification agreement is not being used to infer liability, which has already been determined by the Court as to the AccuFlo and will be determined based on the technical evidence as to the AccuRx.  Therefore, evidence of the indemnity is unlikely to cause the inferential leap that FRE 411 guards against.  Instead, the evidence directly shows that Defendant had knowledge of the risk that it infringed the '481 Patent.

> **3.10    Defendant's Motion to Exclude Opinion Testimony Proffered by Gary Loomis on the Topics of Willful Infringement and Enablement**

The Court tentatively GRANTS the motion IN PART.  Loomis may testify on enablement.  He disclosed his opinion, and Defendant can cross-examine him on it.  But his willfulness testimony is precluded because his expert report failed to offer specific

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

opinions regarding the AccuRx.  Plaintiffs argue that Loomis's opinion concerning the AccuFlo should be understood to also apply to the AccuRx because the devices are quite similar.  But the products have a number of potentially relevant differences, as discussed in the Court's summary judgment Order.  Plaintiffs' argument that Loomis's deposition testimony cured any deficiencies in his expert report regarding the AccuRx product lacks merit: the report itself is the required disclosure.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) requires experts to provide a written report containing "a complete statement of all opinions the witness will express, and the basis and reasons for them" and "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 37(c)(1) provides that a party is not allowed to use information that it fails to disclose as required by Rule 26(a).

### 3.11   Defendant's Motion to Exclude Any Opinion Testimony Proffered by David Hanson

The Court tentatively GRANTS the motion IN PART.  The "traditional and appropriate means of attacking" Hanson's opinions are "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993).  But part of Hanson's lost profits analysis crosses the line.  Specifically, he assumes that Plaintiff would have captured 100% of Defendant's sales.  In a tacit acknowledgment of the aggressiveness and lack of methodological support for that assumption, Hanson also writes that:

> in the event the Court disagrees with my evaluation of a two player market theory and the relevant market, and it concludes that there are other acceptable substitute devices available, then based on my evaluation of the relevant market together with the documentation produced by the parties regarding market share, at a minimum lost profits should be calculated assuming that I-Flow maintains an approximate 80 percent market share.

(Hanson Rpt., Dkt No. 168, Declaration of Robert Conley in Supp. of Def.'s Appl. to File Docs. Under Seal, Ex. 17 at 17.)  Hanson chose the highest of three reported market

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

shares from the previous page of his report, but there is at least some methodology provided that can be subject to cross-examination.  In his 100% sales capture assumption, Hanson ignores that:

- A large portion of Plaintiffs' sales are in the pain market (Hanson Rpt. 8), in which Defendant does not compete.  Instead, the parties compete in the market for pumps for antibiotics and chemotherapy.  (Dkt. No. 176, Decl. of Boris Zelkind in Supp. of Pl.'s Appl. To File Docs. Under Seal, Ex. 1 at 5.)

- Defendant's products are latex free, which is a market differentiator—Hanson notes this, but then ignores it on the ground that "the materials used in the I-Flow pump have not been an issue in I-Flow successfully selling its pumps . . . as evidenced by its dominant market share."  (Hanson Rep. 29.)  But the issue here is whether Plaintiffs would capture the sales outside of its current market share.  Hanson offers only assumption, not analysis, on that issue.

- Defendant's products have a number of other advantages: lower filling force, flow rate profile, self venting bladder, immediate use after filling.  Hanson reasons that these are irrelevant because Plaintiff has the market-leading pump.  (Hanson Rep. 29.)  Again, this simply assumes, without any discernable methodology, that Plaintiffs would capture all of Defendant's sales.  Hanson and does nothing to rule out the possibility that the absence of those features in Plaintiffs' products would cause customers to buy a substitute pump from another provider.

- Defendant would have sought to distribute a non-infringing alternative—for example, a hard-shell pump—before giving its entire market share to Plaintiffs.

- A more narrowly-define market could simply be smaller without Defendant's products and sales efforts.

"A court may conclude that there is simply too great an analytical gap between the data

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

and the opinion proffered." *General Electric v. Joiner*, 522 U.S. 136, 146 (1997). Here, there is no adequate methodological support for Hanson's 100% capture opinion, and there is no analysis between the data and the opinion. The 100% capture opinion will therefore be excluded.

Finally, Defendant has not shown that Hanson relies on the "entire market value rule" because Defendant has not shown that there is a smaller, saleable patented unit than the whole pump. Even if Hanson did rely on the entire market value rule exception, Plaintiffs might be able to prove that the patented features are the primary driver of demand for the products. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

> **3.12 Defendant's Motion to Exclude All Testimony, Argument and Reference to Plaintiffs' Prior Litigations Involving Claims for Infringement of the '481 Patent**

The Cour tentatively GRANTS the motion IN PART. Were Plaintiffs to offer evidence of the prior litigations, Defendant would be forced to delve into an analysis of those prior cases to attempt to distinguish them. This would confuse the issues and waste time, so the evidence should be excluded. But, the settlement agreements should be admissible as data points for the reasonable royalty calculation. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("This court observes as well that the most reliable license in this record arose out of litigation.").

## 4. UNDER SEAL FILINGS

At the hearing, the Court discussed the parties' excessive requests for filing under seal. As usual, the requests were driven by the initial overdesignation of the parties' discovery production, and both sides then applied to file the opposing parties' documents under seal to comply with their obligations under the protective order. The parties acknowledged that only a few documents truly needed to be filed under seal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 12-1064 AG (RNBx) | Date | February 21, 2014 |
|---|---|---|---|
| Title | I-FLOW LLC, et al. v. PROGRESSIVE MEDICAL, INC. | | |

The sealing issue will be further discussed on the first day of trial.

**5.    TRIAL PROCEDURE**

The Court refers the parties to its Scheduling Order Specifying Procedures, and to its published order in *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093 (2012).  The Court specifically notes that trials will be conducted in a dignified manner, following the traditional rules of trial decorum.  Show respect for the trial process by being on time.  Do not address witnesses over age 14 by their first names.  Most examination and argument should be done at the lectern.  The Court recognizes that at times it is necessary to enter the well in this courtroom.

The Court is open to creative trial procedures, such as imposing time limits, allowing short statements introducing each witness's testimony before examination, allowing questions from the jury, and giving the jury a full set of instructions before the presentation of evidence.  The Court reminds parties that trial estimates affect juries.  The Court strongly encourages the parties to give young associate lawyers the chance to examine witnesses and fully participate in trial.

|  | : | 0 |
|---|---|---|

Initials of Preparer

lmb